The purpose of the bill is to set aside and annul as a cloud upon the title of plaintiff, a tax deed made to defendant. The decree denied relief, and plaintiff appeals.
Lot No. 18 in Block D of the town of Mullens was owned by Thurmond in the year 1917, and on the 3d day of June of that year he conveyed it to Worrell, who, on the same day, conveyed it to Slab Fork Land Company; on the 30th day of April, 1921, this company conveyed the lot to plaintiff C. H. Koontz. It appears that the taxes for 1917 were not paid, and in January, 1920, the sheriff sold the lot, and defendant John Ball purchased the same. Afterwards, on June 1, 1921, the county clerk executed to the purchaser a deed in statutory form to defendant, and it is to set aside this deed as a cloud upon the title of Koontz that the bill is filed.
It appears that the purchaser caused notice to be issued by the clerk and served on Worrell on March 16, 1921, and by publication as to Thurmond, in whose name the property was returned delinquent, advising them that he would demand a deed from the clerk for the lot. These notices with returns thereon, or the manner of serving, are not in the record. They are alleged to have been issued and served on the persons in the manner and for the purpose above stated. Upon being served with the notice Worrell, who lived in the town of Mullens, about sixteen miles from Pineville, the county seat, wrote to his brother, E. W. Worrell, to examine the county records, and if there were any delinquent taxes unpaid on this lot, to redeem the same, enclosing him a check for a sufficient amount of money to make the redemption. E. W. Worrell, upon finding that the lot had been sold for delinquent taxes approached Ball for *Page 119 
the purpose of making the redemption. There is a sharp controversy between E. W. Worrell and Ball as to what occurred. Worrell says in substance that Ball informed him that he would procure the certificate of purchase issued to him by the sheriff and allow him to redeem; and that a short time afterwards, before the first of June when the deed was made, he again called defendant's attention to his desire to redeem the land and was promised that no deed would be taken and that the redemption would be allowed; that soon after the deed was recorded he again approached defendant who then refused to allow any redemption. Ball says in substance that E. W. Worrell came to him and stated that he wanted to redeem the lot for his brother G. C. Worrell and that he then informed E. W. Worrell that his attorney F. E. Shannon (whose law office was about fifty feet from that of E. W. Worrell's law office) had the sheriff's receipt or certificate and directed him to go to his attorney and make the redemption, that E. W. Worrell or no one else offered to pay him any money for the redemption; that the only other conversation he had with Worrell was after the deed was made when he refused to allow a redemption giving his reason therefor, namely, that he had a grievance against the Slab Fork Land Company for forcing him to sell some real estate in the town of Mullens at an inadequate price. Shannon, the attorney, testified that Ball had delivered to him the sheriff's receipt in the early part of 1921 along with other receipts of the same character, and directed him to get out proper notices and take steps to have deeds taken for the properties, if not redeemed; that after he had caused notices to be served on G. C. Worrell, and on Thurmond by publication, giving notice to them that the deed would be demanded Ball, in conversations with him on two or three occasions said that E. W. Worrell wanted to redeem the lot and asked him if he had made application to him therefor, and he informed defendant that the matter had not been mentioned to him by Worrell. Worrell does not say he tendered to Ball the money for redemption but says he had his brother's check for sufficient funds to do so, and relied upon the promise that no deed would be taken and that he would be allowed to redeem when Ball procured the *Page 120 
certificate. He did not approach Shannon with reference to the matter. This controversy of fact was decided by the Court in favor of Ball; and it is here urged by Koontz that the finding of fact should have been in his favor. We do not think it necessary to discuss this question of fact. In our view it has little weight in determining whether the deed is a valid one.
The bill charges that the notice to Thurmond of the sheriff's sale and that a deed would be demanded was published in a newspaper printed and published in the town of Mullens for four consecutive weeks and that a similar notice was served on G. C. Worrell on the 16th day of March, 1921, but that neither of these notices nor the return of service thereof was recorded with the deed as required by law; the bill further, charges that the tax deed is a cloud upon plaintiff's title and the prayer is that the deed be set aside and cancelled. It is true that the failure to record these notices with the returns thereon with the deed as required by the statute is not stressed in the bill as one of the main grounds for setting it aside. The bill, in the main, seeks to have the deed cancelled because of the promise and representation of Ball to E. W. Worrell that he would procure the sheriff's receipt and allow a redemption and that no tax deed would be taken, and the testimony is all upon that feature of the case. However, the deeds above mentioned, including the tax deed, are exhibited with the bill, and it appears from an inspection of the tax deed that these notices with the returns thereon have not been recorded. The answer does not deny that they have not been recorded. What effect does this failure to have the notices with the returns thereon recorded have upon the validity of the deed? The statute, section 19, chapter 31, Code 1923, requires that the purchaser, within three months after the expiration of one year from the day of sale, shall file with the clerk a survey or report mentioned in the 17th and 18th sections of the chapter, with the request for a deed, when it shall be the duty of the clerk to issue notice to the person in whose name the real estate was returned delinquent and sold, and to any grantee or vendee of such person, which shall be served at least sixty days before execution of the deed. Provision is made for serving non-residents *Page 121 
by publication and by posting at the front door of the court house. The form of notice is given in the statute; and it is provided that if the land sold is not redeemed against the day fixed in the notice the purchaser shall be entitled to a deed the form of which is given and which recites that the clerk has caused the notice required by said section to be served upon the persons entitled thereto and that the real estate has not been redeemed in the manner provided by law, and that the time set for redemption in said notice has expired. The latter part of the section requires that the notice and the service thereon "shall be recorded by the clerk of the county court along with the plat and description or report of the surveyor, as provided in the seventeenth and eighteenth sections of this chapter." Section 17 requires the purchaser of an undivided interest of any tract or city, town or village lot of land so sold and not redeemed to have the quantity or undivided interest surveyed and laid off in a manner therein set out and a plat and description thereof must be returned to the clerk of the county court "who shall record the same in the deed book along with the deed to the purchaser, if one be made." Section 18 relates to the duty of the purchaser in making a survey and plat, or report at his option, describing and identifying the land, where an entire tract of land has been purchased by him and which survey and plat or report is required to be returned to the clerk and recorded by him in the deed book as provided in section 17. If the purchase be of an entire city or town lot then no survey or report thereof need be made. The tax deed to Ball says that he has caused a report to be made to the clerk specifying the metes and bounds of the lot. We do not find that this plat or survey is recorded as a part of the deed; nor do we find, as above stated, that the notices with the return thereon were recorded with the deed. This requirement of the recordation of the notices with the return thereon was enacted in 1917 in chapter 67 of the acts of that year, and we have no decisions upon the effect of the failure of recordation. It is universally held that the validity of a tax title depends upon a strict compliance with the statute. Those statutes which require notice to the owner or other person in interest of the tax purchase and of the time of *Page 122 
expiration of the period for redemption are strictly construed in favor of the owner, and against the purchaser, and unless their provisions are literally complied with the sale will be void. 44 L.R.A. (N.S.) 667, note. Cooley says, "Whatever the statute may make provision for, subsequent to the sale, in order to the protection of the interest of the parties having right to redeem, must be strictly performed. The reasons which require this are the same that render imperative a strict compliance with all those provisions which are to be observed in the interest of the taxpayer before the sale is made." 2 Cooley on Taxation (3rd ed.) p. 1034. Just what reason actuated the legislature in requiring that notice of expiration of redemption with the return of service thereon should be recorded with the deed is hard to fathom; but it is there. It will be noted that the statute requires the notice to be served on the person in whose name the land was returned delinquent and sold, and to any grantee or vendee of such person. Plaintiff is not the immediate grantee of Thurmond in whose name the property went delinquent, and knew nothing of the sale until after the tax deed was made. The notices and service are not in the record. It is true that plaintiff alleges the substance of these notices and the fact and method of their service on Thurmond and Worrell. They are not attacked for want of substance or form; but the deed is attacked because they are not recorded together with the returns of service. The true owner may never know of the issuance and service of the notice. If they be recorded as the statute requires, he can readily see whether there has been a compliance with the statute sufficient to defeat his right of redemption. The tax deed itself does not divest the owner of the property at the time of the delinquency or any other person having title thereto of their right, title and interest therein, until it is recorded. Sec. 25, chap. 31, Code. Minor Tax Titles, p. 122. The purchaser at a tax sale obtains an equitable and defeasible estate in the land, liable to be defeated by redemption, and which ripens into legal title when the deed is made and recorded. Jones v. Dill, 18 W. Va. 759;Watson v. Eaton, 30 Me. 535. It is imperative that the deed itself strictly conform to the statute. Roe v.Geiger, 91 W. Va. 203, where *Page 123 
there were two tracts sold and attempted to be conveyed in one deed as a single tract by metes and bounds including both tracts sold. By the statute of 1917, the notice of time of expiration of redemption is required in this state, and for the preservation of that notice as evidence that such requirement has been fulfilled, the notice with return must not only be returned to the clerk but must be recorded with the deed showing compliance with the statutory requirement, and showing completed title in the purchaser. No other provision is made for perpetuation of this important evidence of a fact, necessary to sustain the purchaser's title. 37 Cyc. p. 1405 says: "To the lawful issuance and valid effect of a tax deed it is essential not only that the redemption notice shall have been served, but also that return or proof of service, complete and sufficient and such as the statute requires, shall have been made and filed, and that it shall be recorded with the conveyance when this is required by the statute." InPeople v. Ladew, 189 N.Y. 355, cited among other cases, to sustain the text in Cyc. above quoted, evidence of the service of the notice for redemption was required to be recorded with the tax deed and the statute prohibited the recording of the conveyance until the expiration of such notice. There was no recordation of the notice with the conveyance, and it was held that the tax deed was to be regarded as if it had never been recorded. Moreover, it was there held that the curative act which provided that after two years from the recordation the deed should be conclusive evidence that the sale and proceedings prior thereto, and all notices required to be given for redemption, were regularly given, published and served, would not save the deed, and did not apply to a record which was wholly void.
We are of the opinion to reverse the decree, order and decree that the tax deed to John Ball dated the 1st day of June, 1921, executed by the county clerk, Dan W. Cook, conveying Lot 18, Block D, in the town of Mullens in Wyoming county, and recorded in Deed Book No. 60 at page 223, et seq. in the office of said clerk, be set aside and annulled as a cloud upon plaintiff's title to said lot, conditioned upon the payment by plaintiff to defendant of such sum of money expended by the latter in the purchase of said lot at the tax *Page 124 
sale and in the execution and recordation of said deed, together with the proper interest thereon; and the cause is remanded for ascertainment of the proper sum to be paid by plaintiff as above set out.
Reversed, decree entered here; cause remanded.